## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

WANDA J. LEVAN,                               :
                                              :
            Plaintiff                         :
                                              :     No. 4:10-CV-1191
      v.                                      :
                                              :     (Judge Nealon)
MICHAEL J. ASTRUE,                            :
COMMISSIONER OF SOCIAL                        :
SECURITY,                                     :
                                              :
            Defendant                         :

### MEMORANDUM AND ORDER

**Background**

      The above-captioned action is one seeking review of a decision of the Commissioner of

Social Security ("Commissioner") which granted, in part, Plaintiff Wanda J. Levan's claim for

social security disability insurance benefits and supplemental security income benefits.  Levan

claims that she became disabled on April 1, 2006.  (Tr. 11, 84, 115 and 148).[1]  The

Commissioner determined that Levan was entitled to benefits commencing on January 17, 2008.

(Tr. 17).  The basis for the Commissioner awarding benefits commencing on January 17, 2008,

was a psychiatric evaluation completed on that date by Henry Wehman, M.D., a psychiatrist at

the Stevens Center, Carlisle, Pennsylvania.  Dr. Wehman concluded that Levan suffered from

bipolar disorder and posttraumatic stress disorder, and had a Global Assessment of Functioning

("GAF") score of 45.[2]  (Tr. 252-254).  Dr. Wehman also found that Levan had extreme

---

1.    References to "Tr.___ " are to pages of the administrative record filed by the Defendant as
part of his Answer on August 13, 2010.

2.    The GAF score allows a clinician to indicate his judgment of a person's overall
psychological, social and occupational functioning, in order to assess the person's mental health
illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994).  A GAF
score is set within a particular range if either the symptom severity or the level of functioning
falls within that range. Id.  The score is useful in planning treatment and predicting outcomes.
Id.  A GAF score of 41-50 indicates serious symptoms or any serious impairment in social,
occupational or school functioning. Id.  A vocational expert testified that in order for an
individual to be functionally capable of performing unskilled work the individual would have to
have a GAF score of higher than 51.  (Tr. 35).

limitations with respect to responding appropriately to the public, supervisors, co-workers, work pressures and changes in a routine work setting. (Tr. 365). For the reasons set forth below, we will affirm the decision of the Commissioner.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Levan met the insured status requirements of the Social Security Act through March 31, 2010. (Tr. 11, 13 and 111).

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. However, there are other eligibility requirements relating to an applicant's financial situation which must be met.

Levan was born in the United States on March 3, 1968. (Tr. 40-41, 84, 87 and 110). Levan completed the 12th grade in 1986 but did not graduate and has not obtained a General Equivalency Diploma. (Tr. 24-25 and 120). The record reveals that she attended a special/alternative school in the Carlisle Area School District and that she attended special education classes in math and reading. Id. Levan reported that she can read, write, speak and understand English. (Tr. 114).

Records of the Social Security Administration reveal that Levan had employment in the years 1984, 1985, 1987 through 1989, 1991, and 1994 through 2006. (Tr. 94). Levan's total earnings from 1984 through 2006 were $59,627.71. Id. Levan's past relevant employment[3] was as a cashier, waitress, cook and hotel manager. (Tr. 34 and 116). Levan's hightest annual

_____

3.   Past relevant employment in the present case means work performed by Levan during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

2

income was $10,513.33 in 2001 when she was working as a hotel manager.[4] (Tr. 94, 99 and

116).  A vocational expert described her past relevant work as unskilled to skilled,[5] light work.[6]

(Tr. 34).

---

4.    The record reveals Levan was working for Regency 7 Motel of Fayetteville, Arkansas in
2000 and 2001. Tr. 98-99.

5.    The vocational expert described the cashier position as having a Special Vocational
Preparation ("SVP") level of two, the  waitress position an SVP of three, and the hotel manager
an SVP of six.  The SVP is defined as "the amount of lapsed time required by a typical worker to
learn the techniques, acquire the information, and develop the facility needed for average
performance in a specific job-worker situation."  Dictionary of Occupational Titles,
http://www.occupationalinfo.org/appendxc_1.html (Last accessed October 5, 2011). Jobs are
classified as unskilled, semiskilled, and skilled.  A job is unskilled if it has an SVP rating of 2 or
less.  A job is semiskilled if it has an SVP of 3 or 4 and anything above 4 is considered a skilled
occupation.

6.    The terms sedentary and light work are defined in the Social Security regulations as
follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10
> pounds at a time and occasionally lifting or carrying articles like docket
> files, ledgers, and small tools.  Although a sedentary job is defined as one
> which involves sitting, a certain amount of walking and standing is often
> necessary in carrying out job duties.  Jobs are sedentary if walking and
> standing are required occasionally and other sedentary criteria are met.

> (b) *Light work.*  Light work involves lifting no more
> than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even
> though the weight lifted may be very little, a job is
> in this category when it requires a good deal of
> walking or standing, or when it involves sitting most
> of the time with some pushing and pulling of arm or leg
> controls.  To be considered capable of performing a
> full or wide range of light work, you must have the
> ability to do substantially all of these activities.
> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. §§ 404.1567 and 416.967.

3

Levan claims that she became disabled on April 1, 2006,[7] because of diabetes and bipolar disorder. (Tr. 42 and 115). Levan also claims that she suffers from poor concentration and memory problems and that she has problems working around others because of her psychiatric problems. Id. Levan, in a document filed with the Social Security Administration, stated that she stopped working on April 1, 2006. (Tr. 115).[8] However, the record reveals that Levan worked for Farmers Market Restaurant as a cook from October 8, 2006 through November 4, 2006, earning a total of $1134.00. (Tr. 26 and 104-105). Levan has not worked since November, 2006.

On August 9, 2007, Levan protectively filed an application for social security disability insurance benefits and an application for supplemental security income benefits. (Tr. 83-91 and 110). On October 25, 2007, the Bureau of Disability Determination[9] denied Levan's applications. (Tr 42-50). On November 30, 2007, Levan requested a hearing before an administrative law judge. (Tr. 53-54). On October 8, 2008, approximately 11 months later, a hearing was held before an administrative law judge. (Tr. 19-38). On January 27, 2009, the administrative law judge, as stated earlier, issued a decision granting Levan benefits commencing as of January 17, 2008. The administrative law judge determined that Levan was not disabled prior to that date. On January 29, 2009, Levan filed a request for review of the decision with the Appeals Council of the Social Security Administration. (Tr. 18). After approximately 14 months had passed, the Appeals Council, on April 3, 2010, concluded that there was no basis upon which

---

7.   Levan was 38 years of age when she stopped working, and only 40 years of age at the time of the administrative law judge's decision on January 27, 2009. Levan is considered a "younger individual" whose age would not seriously impact her ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c).

8.   This document appears to have been completed by an employee of the Social Security Administration based on a telephone interview with Levan. (Tr. 110-121).

9.   The Bureau of Disability Determination is an agency of the Commonwealth of Pennsylvania which initially evaluates applications for disability insurance benefits and supplemental security income benefits on behalf of the Social Security Administration. (Tr. 42 and 46).

4

to grant Levan's request for review.  (Tr. 1-5).  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

On June 30, 2010, Levan filed a complaint in this court requesting that we modify the decision of the Commissioner which awarded her benefits commencing on January 17, 2008, and award her benefits commencing on April 1, 2006, or remand the case to the Commissioner for further proceedings.

The Commissioner filed an answer to the complaint and a copy of the administrative record on August 13, 2010.  Levan filed her brief on January 14, 2011, and the Commissioner filed his brief on February 16, 2011.  The appeal[10] became ripe for disposition on March 7, 2011, when Levan elected not to file a reply brief.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld.  42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the

---

10.    Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[11] (2) has an impairment that is severe or a combination of impairments that is severe,[12] (3) has an impairment or combination of

---

11. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

12. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is
(continued...)

impairments that meets or equals the requirements of a listed impairment,[13] (4) has the residual

functional capacity to return to his or her past work and (5) if not, whether he or she can perform

other work in the national economy. Id. As part of step four the administrative law judge must

determine the claimant's residual functional capacity. Id.[14]

　　　　Residual functional capacity is the individual's maximum remaining ability to do

sustained work activities in an ordinary work setting on a regular and continuing basis. See

Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis

contemplates full-time employment and is defined as eight hours a day, five days per week or

other similar schedule. The residual functional capacity assessment must include a discussion of

the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1

("'Residual functional capacity' is defined as that which an individual is still able to do despite

the limitations caused by his or her impairment(s).").


**Discussion**

　　　　The administrative law judge, at step one of the sequential evaluation process, found that

Levan had not engaged in substantial gainful work activity since April 1, 2006, the alleged onset

date. (Tr. 13).

---

12.　(...continued)
more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift,
carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's
basic mental or non-exertional abilities include the ability to understand, carry out and remember
simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20
C.F.R. § 1545(c).

13.　If the claimant has an impairment or combination of impairments that meets or equals a
listed impairment, the claimant is disabled. If the claimant does not have an impairment or
combination of impairments that meets or equals a listed impairment, the sequential evaluation
process proceeds to the next step.

14.　If the claimant has the residual functional capacity to do his or her past relevant work, the
claimant is not disabled.

At step two of the sequential evaluation process, the administrative law judge found that Levan had the following severe impairments since the alleged disability onset date of April 1, 2006: bipolar disorder, posttraumatic stress disorder and diabetes. (Tr. 13). The administrative law judge also found that Levan had a history of carpal tunnel syndrome but it was not a severe impairment.[15] Id.

At step three of the sequential evaluation process, the administrative law judge found that, prior to January 17, 2008, Levan did not have an impairment or combination of impairments that met or equaled a listed impairment. (Tr. 13-14).

At step four of the sequential evaluation process, the administrative law judge found that Levan, prior to January 17, 2008, was unable to perform her prior relevant work but that Levan had the residual functional capacity to perform the full range of the exertional requirements of unskilled light work involving simple, repetitive work tasks. (Tr. 14).

At step five of the sequential evaluation process, the administrative law judge, using the Medical-Vocational Guidelines, Rule 202.21, concluded that, based on the above residual functional capacity and Levan's age, education and work experience Levan was not disabled.[16]

---

15.    An impairment is "severe" if it significantly limits an individuals ability to perform basic work activities. 20 C.F.R. § 404.921.  Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual ability to work.  20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

16.    Contained within the Social Security regulations is a grid or table which lists Rules 202.01 through 202.22 in the left hand column.  This grid or table is found at 20 C.F.R. pt. 404, subpt. P, app. 2.  The Social Security regulations provide that "where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Rule 200.00.  In the right hand column of the grid or table is set forth the "Decision" as to whether a claimant is "disabled" or "not disabled."  If all of the criteria of a particular Rule are met "[t]he existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules, i.e., in promulgating the rules, administrative notice has been taken of the numbers (sic) of unskilled jobs that exist throughout the national economy at the

(continued...)

However, the administrative law judge found that beginning on January 17, 2008, claimant's mental impairments met the requirement of Listing 12.04 (affective disorders). Consequently, the administrative law judge determined that Levan was disabled as of that date and awarded her benefits. (Tr. 16-17).

The administrative record in this case is 366 pages in length, primarily consisting of medical records. Levan makes two arguments. First, Levan argues that Dr. Wehman opined that she was disabled mentally as of April 1, 2006, and that the administrative law judge failed to adequately consider that opinion. Second, Levan argues that the administrative law judge failed to consider appropriately her credibility.

We have thoroughly reviewed the record in this case and find no merit in Levan's arguments. The administrative law judge did an adequate job of reviewing Levan's vocational history and medical records in his decision. (Tr. 11-17). Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. (Doc. 19, Brief of Defendant). In this order, we will only comment on the medical evidence which is relevant to the disposition of the case.

Initially, it should be noted that no treating physician or psychologist stated that Levan, prior to January 17, 2008, was disabled for the requisite 12 month period required by law. In fact, one psychologist, Jonathan Rightmyer, Ph.D., in October, 2007, stated that Levan was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." (Tr. 251). Also, from August, 2006, through October, 2007, Levan was periodically examined by Cathy Shadle, a certified registered nurse

---

16.   (...continued)
various functional levels. . . Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established." Rule 200.00(b).

The administrative law judge concluded that, prior to January 17, 2008, based on Levan's residual functional capacity, age, her education and her past work, she was not disabled because she could perform a significant number of light jobs in the national economy pursuant to the Medical-Vocational Guidelines (grid).

practitioner, at Sadler Health Center, Carlisle, Pennsylvania. (Tr. 173-196). Ms. Shadle consistently found that Levan had normal psychological functioning, including that Levan was oriented to time, place and person, her judgment was normal, her long-term and short-term memory were normal, and her mood and affect were normal. Id. In September, 2007, Ms. Shadle noted that Levan did not demonstrate difficulties performing daily activities on a sustained basis. (Tr. 167).

Dr. Wehman did not treat Levan prior to January 17, 2008. At the request of Levan's counsel, Dr. Wehman after the administrative hearing reviewed Levan's medical records and merely noted in a letter that the records indicated Levan had a depressed mood in August 2006 and October 2006 but there was "no specific psychiatric disability" indicated. (Tr. 321). He further opined that "it would be reasonable to assume" that Levan had extreme limitations in work-related functioning "at least at that time." Id. Dr. Wehman never indicated that Levan had extreme limitations in functioning for a continuous 12 month period.

In finding that Levan was not disabled prior to January 17, 2008, the administrative law judge appropriately considered the pre-January 17, 2008, medical records and the opinions of Dr. Rightmyer and Dr. Wehman.

Also, we are unable to discern any error in the manner in which the administrative law judge assessed Levan's credibility. The administrative law judge was not required to accept Levan's claims of work-preclusive mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983) (providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make). It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is

11

charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility."). Because the administrative law judge observed Levan when she testified at the hearing on October 8, 2008, the administrative law judge is the one best suited to assess the credibility of Levan.

The administrative law judge found that Levan's statements concerning the intensity, persistence and limiting effects of her symptoms prior to January 17, 2008, were not credible to the extent they were inconsistent with the residual functional capacity of unskilled, light work. (Tr. 15). In so finding, the administrative law judge referred to the medical records of the Sadler Health Center and Dr. Rightmyer's opinion. Id. Moreover, as noted earlier, Levan was working in October, 2006, after she alleges she became disabled.

The administrative law judge appropriately took into account Levan's mental limitations in his residual functional capacity assessment. He limited her to unskilled, light work involving simple, repetitive work tasks. The administrative law judge appropriately evaluated Levan's credibility.

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed. An appropriate order follows.

Date: October 7, 2011

United States District Judge

## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

WANDA J. LEVAN,                              :
                                             :
      Plaintiff                        :
                                             :   No. 4:10-CV-1191
    v.                                      :
                                             :   (Judge Nealon)
MICHAEL J. ASTRUE,                           :
COMMISSIONER OF SOCIAL                       :
SECURITY,                                    :
                                             :
      Defendant                        :

## ORDER

**AND NOW**, this 7th day of October, 2011, **IT IS HEREBY ORDERED THAT:**

1.    The Clerk of Court shall enter judgment in favor of the Commissioner and against Wanda J. Levan.

2.    The decision of the Commissioner of Social Security denying Wanda J. Levan disability insurance benefits and supplemental security income benefits is affirmed.

3.    The Clerk of Court shall **CLOSE** this case.


**United States District Judge**